United States District Court

Eastern District of Michigan

Southern Division

United States of America,

       Plaintiff,               No. 21-cr-20747

   v.                      Hon. Terrence G. Berg

D-1 Cesar Matia Garcia,

       Defendant.

## Government's Response In Support of Detaining Defendant Cesar Garcia Pending Trial

Defendant Garcia is the head of a large drug trafficking and money laundering organization.  He was indicted for a drug conspiracy involving more than 400 grams of Fentanyl, more than 500 grams of Methamphetamine, plus cocaine and other drugs.  See ECF No. 1, Page ID 1 – 13.  Garcia was also indicted for a money laundering conspiracy. *Id.*

1

Garcia and his girlfriend were arrested in Arizona with a large amount of cash.  The District of Arizona Pretrial Services Agency interviewed Garcia and issued a Report recommending Detention.  See Case 2:21-mj-05060, Document 3, filed 02-10-2022 at pp. 1-7 (hereinafter "Arizona PTS Report").  The PTS in the E.D. Michigan later interviewed Garcia and recommended bond.

After a hearing, the Magistrate Judge detained Garcia because defendant is a risk of flight/non-appearance and is a danger to the community.  Garcia has now asked this Court to reverse the Magistrate Judge's Order of Detention.  The Government urges the Court to uphold the Magistrate Judge and Order that Garcia's detention continue.

## SUMMARY

Under the Controlled Substances Act, it is presumed that Garcia is a danger to the community and a risk of non-appearance.  Garcia is the drug supplier to a large Drug Trafficking Organization that traffics in Fentanyl, Methamphetamine, Cocaine and other drugs.  He has no legal ties to the Eastern District of Michigan.

He has been caught with distribution quantities of Fentanyl, as well as thousands of dollars in cash.  He cellphone contains images of thousands of fentanyl pills and also methamphetamine and large amounts of currency.  Garcia is unemployed, which indicates that the depicted currency is from drug

2

transactions.  Garcia also has several criminal convictions, including for assault with a firearm and also for drugs.  He previously failed to appear, although Garcia claims that this is not so.  Importantly, Garcia was on supervision during the conspiracy.

Garcia's Instagram account contains discussions of fentanyl and methamphetamine deals with co-conspirators.  Garcia also participated in laundering drug proceeds through multiple monetary transactions.

At the time of his arrest in Arizona, Garcia had over $240,000.00 cash in his house.  Agents also found expensive jewelry, believed to be worth about $300,000.00.

Pretrial in Arizona recommended detention.

For all these reasons, Garcia is a danger to the community and a risk of flight.  The Court should order that Garcia's detention continue pending trial.

Other specific examples of Garcia's criminal conduct include:

## FEBRUARY 2021 INSTAGRAM:  DRUG DISCUSSIONS

Agents obtained a search warrant for Garcia's Instagram account.  Among the incriminating items found were drug discussions in February 2021 between Garcia and co-defendant Leo TODD about purchasing 21,000 fentanyl pills as well as over 10 pounds of Methamphetamine.  The discussion included a circle emoji with the letter "M" inside the circle.  Fentanyl pills seized during the investigation

contain an M on them, confirming that the 21,000 "beans" were Fentanyl pills.

## AUGUST 2021 DETROIT JETWAY INTERDICTION: CASH SEIZURE

In early August 2021, GARCIA was at co-defendant Leo Todd's house on Griggs Street in Detroit.  Garcia and his girlfriend left and drove to Detroit Metropolitan Airport.  They had tickets to fly to Phoenix (where Garcia resides). During a jetway interdiction, agents recovered approximately $15,000.00 currency from Garcia and another approximately $10,000.00 from his girlfriend.

## TRAFFIC STOP OF CESAR GARCIA ON SEPTEMBER 27, 2021

On September 27, 2021, at approximately 1:45pm, officials observed, via pole camera surveillance of 17359 Griggs St, Detroit, Michigan, three Hispanic males, later identified as Cesar GARCIA, Marcos MONARREZ and Ismael RODRIGUEZ, arrive at the residence in a gray colored SUV. GARCIA, RODRIGUEZ and MONARREZ all obtained luggage/bags from the rear of the vehicle.  GARCIA transported a dark-colored roller-suitcase into 17359 Griggs St, MONARREZ transported a dark-colored backpack and dark-colored fanny-pack (strapped around his chest) into 17359 Griggs St, and RODRIGUEZ transported a dark-colored backpack and red in color roller-suitcase into 17359 Griggs St.

Agents soon thereafter received information from Delta airlines that GARCIA, MONARREZ and RODRIGUEZ arrived at the Detroit Metro Airport

(DTW) from Phoenix Sky Harbor International Airport (PHX) at 12:43pm on

Delta flight DL1102, approximately 1 hour and two minutes prior to the above

pole camera surveillance.  GARCIA, MONARREZ and RODRIGUEZ are from

the Phoenix, Arizona area and GARCIA is the suspected source of supply for the

DTO.  Court-authorized GPS pings of a cellular device utilized by co-defendant

Leo TODD showed him to be within the radius of 17359 Griggs St for the entirety

of GARCIA, MONARREZ and RODRIGUEZ's stay at the residence.

   At approximately 9:05pm, GARCIA, MONARREZ and

RODRIGUEZ left 17359 Griggs St.  MONARREZ and RODRIGUEZ were

carrying dark in color backpacks, while GARCIA was carrying a light in color

backpack.  At approximately 9:13pm, GARCIA, MONARREZ and RODRIGUEZ

walked toward an "Uber" vehicle parked in front of the residence and speak with

the driver through the front passenger side window of the vehicle.  Several minutes

later, MONARREZ enters into the rear passenger side of the vehicle and hands his

bag to GARCIA.  RODRIGUEZ then opens the rear-hatch of the vehicle and

places his backpack into it.  At the same time, GARCIA places MONARREZ's

backpack and his (GARCIA's) light-colored backpack into the rear-hatch

area.  They got into the vehicle which departed.  The Uber traveled southbound

onto the M-10 Lodge Expressway and then onto southbound Interstate 75, where

the vehicle continued traveling southbound of speeds averaging 85 and 90mph.

At approximately 9:57pm, Michigan State Police (MSP) conducted a traffic stop of the Uber.  During the stop, MSP obtained consent from the driver to search the vehicle.  MSP then spoke with the passengers, RODRIGUEZ, MONARREZ and GARCIA.  RODRIGUEZ stated he had two bags in the vehicle, a black backpack and a Coach bag.  RODRIGUEZ stated he had approximately $900 on his person and additional currency in his bags, which totaled $3,000. MONARREZ stated he had one black Louis Vuitton bag in the car, which he stated contained approximately $8,000.  GARCIA stated he had no bags in the vehicle and the only thing in the vehicle that belonged to him was his wallet.  MSP conducted a consented search of GARCIA's wallet and located $3,200 inside of it. MSP proceeded to search the rear-hatch area of the vehicle, and located the bags that had been described as belonging to MONARREZ and RODRIGUEZ.  MSP also observed a light colored "Northface Gucci" backpack (previously observed on GARCIA's back when he departed 17359 Griggs St) which no one in the vehicle had claimed ownership of.  A search of that same light-colored backpack by MSP Troopers located approximately 1.335 kilograms of blue pills (suspected fentanyl pills matching those earlier seized from luggage at Detroit Metro Airport which was sent from Arizona to a co-defendant in Detroit..  Photographs of the pills and currency located inside the light colored backpack are shown below:

6



During a search of Garcia's electronic social media, agents found a "photo-shoot" or posed photo of Garcia with the very same backpack.

A video on that same media depicts a short video where literally thousands of blue fentanyl pills and other drugs plus money are displayed; and that video was taken earlier that same day (September 27, 2021).

Another video on a different day also contains large quantities of fentanyl pills and methamphetamine.

## CASH TRANSACTIONS/MONEY LAUNDERING

Garcia was involved in money laundering. Drug proceeds were sent via "Cash App" and other "apps" to him throughout the conspiracy. His dexterity with

financial transactions where fictitious names are utilized adds to the calculus that Garcia is a danger and a risk of non-appearance.

## CASH AND JEWELRY AT GARCIA'S HOUSE

As stated above, hundreds of thousands of dollars of U.S. Currency as well as expensive jewelry were seized from Garcia's Arizona residence the same day he was arrested on the indictment earlier this year.

## LAW FAVORS DETENTION

### Presumption of Detention

The Indictment charges Garcia with drug conspiracy involving 400 grams or more of fentanyl, 500 grams or more of methamphetamine plus cocaine and marijuana. But Garcia was involved in far more than 1,000 grams of fentanyl, far eclipsing the statutory threshold of 400 grams of fentanyl. And the substantial amount of methamphetamine and other drugs further establish the presumption of detention.

If convicted, Garcia faces a mandatory minimum ten (10) years' incarceration and a maximum of lifetime incarceration under the Controlled Substances Act. See 21 U.S.C. 841(a), 841(b) and 846. He was a leader and supplier of drugs, which renders him ineligible for the

8

"safety valve."

Under these circumstances, 18 U.S.C. 3142 provides that a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the defendant in court and the safety of the community.

Because of the seriousness of his charged drug offense, Garcia faces a presumption of detention. 18 U.S.C. § 3142(e)(3)(A); *U.S. v. Stone*, 608 F.3d at 945 (6th Cir. 2010). That presumption imposes a burden of production on a defendant to offer at least some evidence that he is not a flight risk or danger to the community. *Stone*, 608 F.3d at 945. Even if a defendant satisfies that burden, the presumption of detention does not vanish. *Id.* The district court must still afford some weight to the presumption because it reflects Congress's judgment that "particular classes of offenders should ordinarily be detained prior to trial." *Id.*; *see also United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (quoting *U.S. v. Martir*, 782 F.2d at 1144 (2d Cir. 1986)).

<u>Additional Analysis Favors Detention</u>

The evidence concerning danger to the community is strong.

9

Garcia and two co-conspirators were caught in the September 2021 traffic stop with a kilogram of Fentanyl.  The controlled substances in this case include mammoth quantities of serious and dangerous drugs – namely fentanyl and methamphetamine, as well as other drugs.  And Garcia's Instagram account contains numerous drug discussions with other Conspiracy members which show a continuing conspiracy.

Defendant's role was not limited to a single local traffic stop.  He flew into Detroit from Arizona with two co-conspirators.  He went with them to a stash house in Detroit, then left with those same co-conspirators; Garcia himself carried to the car a backpack of fentanyl.  They were heading out of Michigan to distribute the drugs.  Each of the three defendants in that traffic stop had thousands of dollars in cash.

As the Arizona PTS Report indicates, Garcia was unemployed.  Arizona Report at p.2.  The money and jewelry seized from Garcia is not consistent with his unemployed status.  Moreover, Garcia told Arizona PTS that he had no bank account, paid his bills with "savings" but did not know where his money was located.  *Id.* at p. 3.

Garcia has a drug problem.  He uses marijuana daily.  *Id.*

10

Garcia's criminal history is troubling, as Arizona PTS reported. *Id.* at p. 5. Garcia is a lifelong criminal with convictions for drugs, weapons, and violence. *Id.* Too, Garcia was on supervision during the drug and money laundering conspiracies. *Id.* Garcia thus performs poorly under supervision and is not a good candidate for bond.

Due to the offense charged, history of failure to appear, prior criminal history and criminal activity while under supervision, the Arizona PTS – which Garcia now asks to supervise him -- found that Garcia is a risk of non-appearance and recommended detention. *Id.* at p.6.

For these reasons and also Garcia's history of violent behavior, history of weapons and history of substance abuse, the Arizona PTS believes Garcia is a danger to the community. *Id.*

Garcia is facing at least 10 years' mandatory minimum incarceration in prison on the drug conspiracy alone. *See* 21 U.S.C. § 841(b)(1)(A). Avoiding that relatively "lengthier sentence if convicted" provides a strong incentive for Garcia to flee. *United States v. Khraizat*, No. 00-2128, 2000 WL 1769637, at *2 (6th Cir. Nov. 17, 2000); *see also Namer*, 2000 WL 1872012, at *2 (finding that "the serious nature of the

11

charges" and "the lengthy potential sentence faced by the defendant" both "weigh in support of detention").

Garcia isn't some kid with a dime bag.  The September 2021 traffic stop, his Instagram discussions, money laundering, and the facts surrounding his 2022 arrest show that Garcia is an unacceptable risk for bond.

## CONCLUSION

The factors to be considered in 18 U.S.C. 3142 include the nature and circumstances of the offense charged. As set forth above, this is a large drug conspiracy and Garcia is responsible for at least one kilogram of Fentanyl plus a large amount of methamphetamine – particularly dangerous drugs.  Another factor is the weight of the evidence on dangerousness and risk of flight.  The facts favor the government on this factor.  The defendant's history and characteristics favor detention.  And he does not have a stable employment but had hundreds of thousands of dollars in cash and jewelry residence or employment.   Finally, the factor of danger to the community strongly favors the government.

12

The factors must be weighed in light of the presumption of detention.  Garcia has not rebutted the presumption of detention.  Even if there was no presumption, the facts show that Garcia has long been involved in distributing vast quantities of Fentanyl and other drugs. He has no ties to this District and does not have a steady job and he has incentive to flee.  The Magistrate Judge properly found that Garcia is a danger to the community and a risk of flight. This Court should deny defendant's motion for bond.

## **CONCLUSION**

The Court should Order that GARCIA be detained pending trial.

Respectfully submitted,

*s/ David Portelli*
David Portelli
Alyse Wu
Assistant U.S. Attorneys
(313) 226-9100

Dated: May 3, 2022

13

## CERTIFICATE OF SERVICE

I hereby certify that on Tuesday, May 03, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Opposing Counsel on file.

*s / David Portelli*
David Portelli
Alyse Wu
Assistant United States Attorneys

14